THE TEXAS MEXICAN RAILWAY COMPANY v. BLAS URIBE ET AL.

No. 8117.

1. **Office Surveys— Quære.—** Whether the evidence introduced by the defendants was sufficient to show that no *actual* surveys were made under the location made by the plaintiff, and if so, whether it could maintain the action of trespass to try title upon proof of *office surveys*, are important and difficult questions which we find it unnecessary to decide.

2. **Rule of Supreme Court—Immaterial Errors.—** It is a rule in this court to affirm all judgments of the court below when the evidence is such that we can say that it did not admit of any judgment other than that which was rendered. In such cases errors which ought not to have affected the result are harmless; so also an appellant is not prejudiced by a wrong conclusion of the court, if the court by a different process should have rendered the same judgment which it did render. See example.

3. **Presumption of Grant from Long Possession.—** The rule in this court in regard to the presumption of a grant is, that it is a mere presumption of fact, and not a presumption of law. Such presumption always may be rebutted, and in such cases it must appear that the grant could have a legal origin.

4. **Facts Supporting and Evidencing a Grant.—** See circumstantial evidence held sufficient to sustain a grant emanating more than a century ago—as to power of the officer granting, the locality of the land, the subsequent recognition of the validity by a legitimate proceeding, possession as established by documentary testimony; the state of country and the changes in government accounting for the absence of the original grants, or of duly authenticated copies.

5. **Case Adhered to.—** The opinion in Von Rosenberg v. Haynes, ante, page 357, referred to as decisive of the identical questions material to this case.

APPEAL from Webb.     Tried below before Hon. J. C. RUSSELL.

The opinion in Von Rosenberg v. Haynes et al. (ante, page 357), contains a statement of the facts, and a discussion of the questions arising upon the competency and relevancy of the documentary evidence relied upon to sustain the Borrego title.    This title is also involved in this case. Both cases involve the sufficiency of the testimony to establish a grant in favor of Borrego.

In this case the further question is raised, but not decided, whether an action in trespass to try title can be sustained upon certified copies from the Land Office of the original certificate, of the location, and field notes, when it is shown that the field notes were made by or taken from *office surveys*, and that no actual surveys had ever been made.

*Thomas W. Dodd* and *Coopwood & Son*, for appellant.—See brief of Coopwood & Son in Von Rosenberg v Haynes.

*McLane & Atlee*, for appellees.—See brief for appellees in Von Rosenberg v. Haynes et al.    Also:   A certificate located and surveyed in the manner provided by the statute is sufficient to maintain the action of

trespass to try title. But when such certificate has not been located by entry or application, filed in the surveyor's office, together with the certificate to be surveyed, no legal survey can be made; and without a valid location and survey thereunder, actually made on the ground, the action of trespass to try title can not be maintained; and when the entry and the certificate show on their face that they were not filed in the surveyor's office, and objection to the admissibility thereof for that reason was made, the court did not err in its finding that they were not so filed when the plaintiff failed to offer proof of such filing.

As to valid location and survey: Rev. Stats., arts. 3894, 3895, 3896, 3897, 3906, 3908 (subdiv. 8), 3902; Linn v. Scott, 3 Texas, 67; Stafford v. King, 30 Texas, 269; Boon v. Hunter, 62 Texas, 582; Gerald v. Freeman, 69 Texas, 201; Railway v. Locke, 63 Texas, 628; Thompson v. Locke, 66 Texas, 383; Pasch. Dig., art. 5303.

As to sufficient title to maintain action: Rev. Stats., art. 4795.

As to burden of proof: Clark v. Hills, 67 Texas, 148.

GAINES, Associate Justice.—This was an action of trespass to try title, brought by appellant to recover of appellees sixty-two sections of land of 640 acres each, lying in Zapata County. The suit was originally instituted in the District Court of that county, but was transferred to the District Court of Webb County. The defendants pleaded not guilty.

The plaintiff claimed title by locations and surveys of the several parcels of land sued for, made for it by virtue of certain alternate certificates issued to it by the State. To maintain its title, it offered in evidence certified copies from the General Land Office of the applications, certificates, and field notes of the surveys of the respective sections described in its petition. The defendants introduced evidence to establish two defenses: first, that the lands had never been actually surveyed; and second, that they were parts of grants made by the authority of the King of Spain to Jose Basquez Borrego between the years 1750 and 1760.

The case was tried without a jury, and the court found that the lands had never been actually surveyed, but that the field notes exhibited were mere "office surveys," commonly so called; that is to say, that they were made out by the surveyor without going upon the land and running the lines and marking the corners as required by law. The court also found that an imperfect grant of the land in controversy had been made about the year 1757 by the King of Spain to Borrego, which had since been recognized by the State of Tamaulipas in 1829, and that Borrego, his heirs, and assigns, had been in continuous possession of the land ever since the inception of the claim, asserting title under the grant. The court also concluded as a matter of law, first, that because there was no actual survey of the lands, the plaintiff could not maintain an action; and secondly, that the defendant showed such title as brought the land within the pur-

view of that provision of the Constitution which protects from location lands "titled or equitably owned." On both of these grounds it was held that the plaintiff could not recover.

The assignments of error call in question the correctness of the court's findings both of fact and of law, and also present many questions upon the rulings of the court in admitting and excluding evidence. Whether the evidence introduced by defendants was sufficient to show that no actual surveys were made under the location, and if so, whether the plaintiff could maintain its action of trespass to try title upon proof of "office surveys," are important and difficult questions which we find it unnecessary to decide.

With these questions laid out of the case, it is almost identical with the case of Von Rosenberg v. Haynes et al., ante 357, this day decided in this court. In that case the appellant filed certificates upon a part of the land claimed by the defendants herein as the Borrego grant, and sought by a writ of mandamus to compel the surveyor to make surveys in pursuance of the locations. Many, if not all, of the defendants in this suit were made defendants in that; and in that suit, as in this, the defendants sought to establish a grant from the King of Spain. With one or two exceptions the same evidence was offered upon this question in both cases, and the same rulings were made, except that in Von Rosenberg v. Haynes, which was tried at a term subsequent to that at which the present case was determined, the judge held that evidence showed that the grants to Borrego were perfect grants.

It is a universal rule in this court to affirm all judgments of the court below when the evidence is such that we can say that it did not admit of any judgment other than that which was rendered. Bowles v. Brice, 66 Texas, 724, and cases cited. In such cases errors which ought not to have affected the result are harmless. It is immaterial if evidence has been admitted which should have been excluded, provided the undisputed evidence which has been properly admitted should lead to no other result. So also the appellant has not been prejudiced by a wrong conclusion of the court, if the court, by a different process, should have rendered the same judgment which has been rendered.

Applying this rule to the case before us, we are of opinion that the judgment should be affirmed. We need not, in this opinion, enter into a discussion of the correctness of the court's rulings in admitting evidence over the objections of the appellant. The same questions, in substance at least, were raised in the case of Von Rosenberg v. Haynes, above referred to, and are determined by the opinion in that case. After eliminating all improper evidence in that case, we there held, that the legal evidence which remained not only justified the court's conclusion that the land was legally granted to Borrego, as claimed by the appellees, but also that it justified no other conclusion. And so also we are of opinion

that the legal evidence which was admitted in this case was sufficient, not only to admit of the conclusion that the lands had been lawfully granted, but to require of the court to so find, and to render a judgment for the defendants. It is true, that the record of "the general visit" to Laredo which is found in the archives of that city, and which was introduced in evidence in Von Rosenberg v. Haynes, was not offered in the present case. A part of that document was offered by the defendants, but was excluded by the court upon objection having been made to it. The document contains very important evidence bearing upon the question of the validity of the Borrego grant. It shows that the deputation appointed by the viceroy, in the year 1767, to lay out the town of Laredo, to assign to it its lots for public purposes, and its exidos, and to extend titles to the colonists to their respective lots and porciones, not only recognized the grant to Borrego, but found it necessary to expropriate a part of that grant to the use of the colony. The proceedings contain the following recital with reference to Borrego's claim: "The original permission of his settlement was under condition that if H. M. should need said lands, in whole or in part, to establish any town or mission, he could take them; and since the common good of this town should prevail over the private one of said hacienda or haciendas, we assign," etc. The expropriation was therefore strictly in accordance with the terms of Borrego's grant, and was a recognition of his right.

That this evidence is material and important is not to be doubted. With it, the evidence in this case in support of a grant would be substantially, if not precisely, the same as the evidence in Von Rosenberg v. Haynes, which was held not only sufficient to sustain a judgment for the defendants, but such as would properly admit of no other judgment. But the recognition of the Borrego grant in the proceedings of the "general visit," though strongly confirmatory of the presumption of the legality of such a grant, is in a general sense cumulative upon the other evidence in the case which leads to that presumption. At a later period, the validity of the grant was distinctly recognized by the Governor of the State of Tamaulipas, to which jurisdiction the land in controversy was then subject. The proceedings before the governor and his council is held to be legitimate evidence in Von Rosenberg v. Haynes, and the questions as to its admissibility and effect need not be discussed here. We will merely remark, that they show not only a recognition of the grant, but also a confirmation of it, in one sense of that term. Whether they are to be deemed judicial or even quasi judicial in their character, we need not determine. In either event, we may properly conclude that they establish in substance the same fact as was shown by the proceedings of the "general visit" in evidence in the Von Rosenberg case, and that therefore the failure to introduce the latter in the present case makes no substantial difference.

The rule laid down in the later cases in this court in regard to the presumption of a grant from long possession is, that it is a mere presumption of fact, and not a presumption of law.  Sulphen v. Norris, 44 Texas, 204; Taylor v. Watkins, 26 Texas, 688; Yancey v. Norris, 27 Texas, 40.

In the well considered opinion in Taylor v. Watkins, supra, Judge Bell says: "I draw the conclusion from what has been said, that the question whether a grant will be presumed or not is a question for the jury; in other words, that the court ought always to leave it to the jury to presume a grant or not, according to the evidence and circumstances of the case; that the presumption of a grant does arise from long and uninterrupted possession, where the possession is consistent with the presumption, and that the jury may be properly told thus much as a matter of law; but that the presumption is one that may always be repelled by proof." It is also held, that when it is sought to establish a grant from the sovereign by presumption, it must appear that the grant could have a legal origin. Sulphen v. Norris, 44 Texas, 204.

There is nothing in the evidence to show that a grant of the land in controversy may not have been legally made to Borrego at the time it is claimed to have been made.  It is a historical fact that at this time Escandon, who is known as the conqueror and pacificator of the frontier of the Sierra Gorda, was in command of the province New Santander, which then embraced that frontier and included the territory now in dispute. He was charged with the settlement of that country, and established most, if not all, of the early settlements in that jurisdiction.  He was the lieutenant of the viceroy, and evidently was invested with very enlarged powers and jurisdiction.  The grants in question purport to have emanated from him.  If he did not have power to make the grants, that fact does not appear from the evidence in the case.  It was shown by undisputed testimony that the lands which are claimed to have been granted to Borrego have been continuously occupied by persons claiming under him by inheritance and purchase for a time as far back as human memory could be expected to extend.  During all this time there were towns and ranches upon it.  At a time prior to 1830 most, if not all, of the inhabitants had been driven away by hostile Indians.  Some of the settlements had been established prior to that year, but how long before, the witnesses did not know.  After that year, the incursions of the Indians having ceased, the inhabitants returned and built other towns and ranches, which have ever since been occupied.  So much we learn from living memory. The documentary evidence leaves little room to doubt that the occupation had extended from the time the grant is claimed to have been made. During this long period it does not appear that the right of the occupants was ever called in question, except about the year 1828, when certain inhabitants of Laredo sought to denounce the lands as vacant.  Their action induced the proceedings which were instituted before the Governor

of Tamaulipas and to the investigation of the title which was made by him with the aid of his council.  The result of the investigation was a recognition of the title by the governor, and a command by him to the authorities at Laredo to respect the Borrego grant.

The country on the Rio Grande where the land in question is situate has been swept by successive revolutions and harried by the incursions of hostile savages.  The seat of government of the province and state to the jurisdiction of which that section of country has been subject has been repeatedly changed.  Upon the establishment of the independence of Texas, the archives relating to the title in dispute became foreign to our jurisdiction.  Under such circumstances it is not remarkable that the defendants should be unable to produce either the original muniments or authentic copies of a title which emanated, if at all, nearly a century and a half ago.  It is to such a case that the doctrine of the presumption of a grant is peculiarly applicable; and we are of the opinion that the evidence leads inevitably to the conclusion that there were grants—that the lands in controversy are " titled " and were not subject to location.

Because the evidence legally admitted required a judgment for the defendants and the errors of the court were not prejudicial to appellant, the judgment is affirmed.

*Affirmed.*

Delivered June 24, 1892.


Motion for rehearing was transferred to the Court of Civil Appeals and by it overruled.