Delivered January 30, 1891.

---

### D. D. CLAIBORNE v. ELKINS & PERKINS ET AL.

#### No. 2914.

1. **Tax Deed.**—A tax deed executed without authority, subsequently altered by the unauthorized insertion of field notes, the original not describing the land, can form no basis for title by limitation of five years. Parties asserting such claim are simply trespassers.

2. **Title by Limitation of Five Years.**—A party entering upon a tract of land under a deed duly recorded, and holding adverse possession thereof under the deed, is affected in his title by limitation by an entry by a trespasser only to the extent of the land in actual possession of such trespasser.

APPEAL from Goliad. Tried below before Hon. H. Clay Pleasants. The opinion gives a statement.

*D. D. Claiborne*, for appellant.

*Browne & Reeves*, for appellees.—Appellant has no title to the 480 acres of land in controversy. Appellant under the law can claim no right to cancel a deed to land nor recover the possession of land in which he has no interest and to which he has no title.

On ten years statute of limitation. Sayles' Civ. Stats., arts. 3194, 3215; Grigsby v. Peak, 57 Texas, 142; McMullen v. Hodges, 5 Texas, 73; Bender v. Crawford, 33 Texas, 758; Goldfrank v. Young, 64 Texas, 432.

On five years statute of limitation. Sayles' Civ. Stats., arts. 3193, 3198; Bracken v. Jones, 63 Texas, 184; Richards v. Smith, 67 Texas, 610; Parker v. Baines, 65 Texas, 605; Cantagrel v. Von Lupin, 58 Texas, 570.

HENRY, ASSOCIATE JUSTICE.—This suit was instituted by the appellant. He claimed that he had acquired title to 640 acres of land, which he described by metes and bounds, through the five and ten years statutes of limitation. He charged that the defendants were claiming 480 acres of said tract through a forged and void deed purporting to be a tax title, which was a cloud upon his title and which he prayed the cancellation of.

Two of the defendants pleaded not guilty, and the remaining one pleaded that he was holding only as the tenant of his codefendants.

The cause was tried without a jury. The judgment was for the defendants who had pleaded "not guilty."

The facts as found by the court were substantially as follows: Mrs. Spires settled upon the land in 1862 and continuously held possession of a small portion thereof until 1883, when she sold to J. P. Spires, who at the same time conveyed to plaintiff an undivided one-half of the land. The first deed was filed for record on the 16th day of June, 1883, and the other one on the 2nd day of October, 1884. J. P. Spires took possession of the land when he purchased it and continued to hold it for himself and plaintiff, paying the taxes thereon, until the year 1885, when he conveyed his half to plaintiff by a deed bearing date December 23, 1884. This deed was filed for registration on the 29th day of December, 1884. The plaintiff has occupied through his tenants continuously since it was conveyed to him by Spires, paying the taxes thereon.

In the year 1872 or 1873 Mrs. Spires had the land in controversy surveyed and its boundaries marked, previous to which there was nothing to indicate the extent of her claim other than her dwelling and out houses.

In 1882 the tax collector of Goliad County offered for sale as the property of an unknown owner 787 acres of land granted to John Smiley. There being no bidder, the land was bought in for the State, but the collector on the same day made a deed to the defendants Elkins & Perkins in consideration of their paying him the taxes and costs. This deed did not describe the land further than to give the name of the patentee and the number of acres. Afterwards said defendants caused a survey of the land to be made, including 480 acres of the said 640 acres tract, and they caused the field notes to be inserted in the deed previously made. This was done more than two years after the tax deed was originally made. The survey having been made by the county surveyor, the defendants requested the collector to insert the field notes in the deed. He declined to do so on the ground of his want of authority, but suggested that the surveyor was the proper person to do it. The surveyor, upon being applied to, did insert them. Afterwards, on the 6th day of August, 1884, this deed was recorded in the county clerk's office.

The defendant Perkins was at the time occupying 160 acres of land outside of but adjoining said 640 acres tract, which he was claiming under the statute of limitations of ten years. Perkins had extended his cultivated land to the extent of 25 acres over the 640 acres tract, but no claim was made to the 25 acres until after the said tax deed and survey were made, after which defendants claimed all of the land embraced by said deed and survey.

In 1887 defendants erected a house upon the 640 acres tract and occupied it through a tenant, claiming the 480 acres included in the tax deed and survey.

The facts show that plaintiff had title to 160 acres of the land under

the ten years statute of limitations. Title to the remaining 480 acres of the tract sued for was acquired by him under the five years statute, if that result was not defeated in whole or in part by such possession as was taken by the defendants or one of them of the same land.

No effect can be given to the tax deed. Its execution was without authority in the first place. If the authority to execute it had been sufficient, the subsequent unauthorized, if not fraudulent, insertion of the field notes must be held to have avoided it for any and all purposes. If there had been no vice attending the original execution of the deed, it still was not in any sense a conveyance of the land in controversy, because it did not describe it.

The defendants are to be treated as naked trespassers, and the only questions are, what right did they in that capacity acquire for themselves or deprive the plaintiff of, upon whom rests the burden of establishing his own title before he can have the relief against the defendants for which he prays?

The defendants took actual possession of part of the land, and of so much of it as they took such actual possession they interrupted plaintiff's adverse proposition under the five years period.

In cases of mixed possession, as between the owner of the title and an intruder, the owner is treated as being constructively in possession of the whole of the land not actually occupied by the intruder. Wood on Stat. Lim., 543.

"The general rule is that a person entering upon lands adversely without any deed or color of title is restricted to the land actually occupied by him and takes nothing beyond the limits of his actual occupancy." Wood on Stat. Lim., sec. 259.

The plaintiff in this case, holding under a duly recorded deed, had constructive possession of all the land described in his deed not actually occupied by the defendants or one of them.

The possession of the defendants of the 640 acres tract must under the circumstances of this case be strictly limited in its effect upon plaintiff's claim to the land actually occupied by them or one of them.

The land so occupied should be so identified that it can be distinguished and described in the final judgment.

It was error not to render judgment in favor of plaintiff for so much of the land in controversy as was not so occupied, and for that reason the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered January 30, 1891.