SAMUEL HAYNES ET AL. v. TEXAS & NEW ORLEANS RAILROAD COMPANY.

Decided May 16, 1908.

**1.—Injunction Bond—Amendment—Signature of Principal.**

Upon motion to quash an injunction bond on the ground that it was not signed by the principal in the bond, it was not error to permit the attorney for the principal to sign the principal's name to the bond, and thereupon overrule the motion to quash.

**2.—Limitation—Possession of Trespasser—Entry of Owner—Effect—Case Followed.**

The adverse possession of a trespasser upon land, so far as the statute of limitation is concerned, is immediately limited and restricted to the land actually enclosed by him, upon the entry into possession by the owner in person or through his tenant, even though the possession of the owner is of only a

part and not of the whole tract. The case of Bowles v. Brice, 66 Texas, 730, followed.

**3.—Trial—Harmless Errors.**

Where it appeared from the undisputed evidence that an appellant recovered judgment in the court below for more land than he was entitled to under his plea of limitation, errors of procedure upon the trial complained of by him will be disregarded.

**4.—Reformation of Judgment—Practice.**

Where an appellee makes no complaint in the trial court of the judgment rendered against him, the Appellate Court will not consider a mere request in his brief that the judgment be reformed in his favor.

Appeal from the District Court of Jasper County. Tried below before Hon. W. B. Powell.

*Holland & Holland,* for appellants.—Second assignment of error.—The court erred in refusing to give special charge asked by defendant, wherein the defendant asked the court to charge as follows: "It is not essential to actual possession of land, as that term is explained in the special charge given, that the land be actually inclosed." Whitehead v. Foley, 28 Texas, 285; Richards v. Smith, 67 Texas, 612; Kimbro v. Hamilton, 28 Texas, 565.

Third assignment of error.—The court erred in giving special charge requested by plaintiff, wherein the jury are instructed that, "in construing and arriving at the meaning of actual possession, as stated in the general charge of the court, that merely grazing cattle over land or casually cutting wood from the land here and there is not sufficient evidence of possession to support the statutes of limitation, but there must be other evidence showing actual appropriation of land continued openly for a period of ten years or more before the institution of this suit." Watkins v. Cates, 59 S. W., 1123; Mitchell v. Mitchell, 80 Texas, 113.

Fourth assignment of error.—The court erred in that portion of its general charge wherein he instructs the jury that, "in order to sustain the plea of limitation of ten years, the party making such claim must claim the land occupied by him by specific metes and bounds for a period of ten consecutive years prior to filing suit therefor, and that such possession and claim must be actual, continuous, notorious, distinct and hostile to that of the owner of said land," for the reason that a party actually occupying land adverse and hostile to that of the owner is not compelled to actually mark out the lines of the land he claims, but is entitled to 160 acres to include his improvements. Pearson v. Boyd, 62 Texas, 541.

Fifth assignment of error.—The court erred in that part of its charge to the jury wherein the jury are instructed that, "if they are not satisfied by the preponderance of the testimony that the said H. N. Ratcliff has had peaceable and adverse possession, cultivating, using, enjoying and claiming the whole 160 acres embracing the northwest corner of section 9, but are satisfied from a preponderance of the evidence that he has been in the peaceable and adverse possession of any part of said 160

acres, as described in his answer, claiming, cultivating, using and enjoying the same for a period of ten years before the filing of this suit, and you further find that said portion of said 160 acres, if any, as possessed, claimed and occupied, used and enjoyed by him, the said Ratcliff, was, at the time it was occupied and claimed, marked·by specific metes and bounds, then you will find for him for so much, if any, of said 160 acres as was so claimed by him by specific metes and bounds."

Sixth assignment of error.—The court erred in rendering judgment in this case for plaintiff for any part of the land sued for, or otherwise rendering judgment at all in this case, for the reason that the verdict of the jury does not dispose of either of the issues of all the parties to this suit, for the reason that no disposition whatever is made of the land claimed by plaintiff, either in favor of or against it, except as to 382 7-10 acres off of the west side of the northwest quarter of section No. 9, and for the further reason that the verdict for two cents per tie for all ties cut and removed by C. E. Slade and H. N. Ratcliff from the northwest quarter of section No. 9 of H. N. Ratcliff's east preemption line is wholly unintelligible, and is not sufficient to base a judgment on, either for or against either plaintiff or the defendant.

*T. D. Cobbs, Ira P. Hildebrand* and *Baker, Botts, Parker & Garwood,* for appellee.

REESE, ASSOCIATE JUSTICE.—The Texas & New Orleans Railroad Company brings this action in trespass to try title against H. N. Ratcliff and others to recover section 9, Texas & N. O. R. R. Company survey, in Jasper County. One, C. E. Slade, was joined as defendant upon the complaint that he had cut certain ties off of the land, the value of which was sought to be recovered.

H. N. Ratcliff disclaimed as to all of the land sued for except the northwest quarter of the section, containing 160 acres, as to which he pleaded title under the statute of limitation of ten years, and prayed that he be quieted in his title thereto.

Upon trial with a jury there was a verdict for defendant Ratcliff for 64 acres of the said 160 acres claimed by him. Judgment was rendered in his favor for this 64 acres, and for plaintiff for the balance, from which judgment defendant appeals. The disposition of the suit as to the other defendants who claimed other portions of the survey does not concern this appeal.

This suit was instituted January 25, 1905. Appellee showed title by patent from the State to itself for the section.

In 1891 appellant settled upon the tract of land, which he supposed to be vacant public domain, with the intention of acquiring a homestead under the preemption laws. In 1898 he procured a patent for 160 acres, which, so far as we can gather from the record, with very little assistance from the briefs, afterwards proved to be entirely or partly in conflict with section 9, T. & N. O. R. R. Co. survey, extending from north to south along the western side of the survey, and a short distance over on the northeast. Appellant erected a dwelling-house in 1891, and enclosed some of the land, which enclosure he increased from time to time

until at the date of the trial he had about 40 acres under fence, including two cultivated patches, one north and the other south of his house, both on the said preemption and upon the northwest quarter of section 9, and also an enclosed pasture of a few acres southeast of his house and east of the preemption strip, on the northwest quarter of section 9. The evidence is conflicting as to the exact origin and extent of appellant's claim. His own testimony, corroborated to some extent, is that he always, from the time of his first settlement, claimed the entire northwest quarter of the section, and that he exercised over the entire tract, in addition to his actual residence and enclosure, such acts of possession and ownership as cutting timber off of it for such purposes as might be needed in erecting his buildings, fences, etc., and for domestic use. Also that he at one time had enclosed and in cultivation in rice for four or five years about four or five acres some distance east of the preemption strip on the quarter section, and that he from time to time made pastures for his stock, the size of which is not shown, on the quarter section off of the preemption strip, which he moved about indiscriminately over the tract. It is not shown how long he maintained these independent pastures at any one time in one place nor altogether, on the 160 acres, nor the extent of any of them. His cattle and other live stock roamed over the unenclosed portion of the quarter section at will, as did those of his neighbors. Other evidence tended to show that appellant did not set up any claim to any part of the land outside of his preemption until about 1898 or later, when it was discovered that his preemption was in conflict with section 9. He rendered 160 acres, his preemption, for taxes every year from 1892 to 1898, when he sold 50 acres of it, and after that every year up to 1905 he rendered 100 acres of his preemption.

In 1898, J. A. Ratcliff, who had settled on the southeast quarter of section 9, upon which he had a small improvement consisting of a dwelling-house and an enclosed field of about five acres in cultivation, and Samuel Haynes, who had likewise settled upon the northeast quarter on which he had a dwelling and an enclosed field of about six acres in cultivation, each executed to appellee an acknowledgment of tenancy. These instruments were in writing and are identical in their terms. That of J. A. Ratcliff is as follows:

"I, J. A. Ratcliff, of Jasper County, Texas, do hereby acknowledge that the Texas & New Orleans Railway Company is the owner of section number nine (9) as shown by the map of Jasper County, lying about 2½ miles northwest of the southeast corner of Jasper County, Texas, on which section No. 9 said Ratcliff has about 5 acres in cultivation and a dwelling-house and other improvements now occupied by said Ratcliff, which he holds as the tenant of said railway company, and said Ratcliff hereby agrees to surrender possession of said land and premises upon ten (10) days notice from said railway company or its assigns.

"Witness my hand this 11th day of May, 1898, in presence of the following witnesses.

(Signed) J. A. Ratcliff."

These parties continued in the occupation of the respective tracts up to the trial, under these contracts.

The 64 acres for which appellant had judgment is all of the pre-emption strip on the northwest quarter of section 9, and includes all of his enclosures and improvements, except the small pasture southeast of his dwelling and east of the east line of the pre-emption, and includes also a part of this land which has never been under enclosure.

A temporary injunction was granted restraining appellants from cutting timber. When the case was called for trial appellants moved the court to quash the writ on the ground that the name of appellee was not signed to the bond, whereupon leave was granted to appellee's attorney to sign appellee's name to the bond, and thereupon the motion to quash was overruled. This action is made the basis of the first assignment of error. The assignment is without merit.

There was no error in refusing the charge requested as set out in the second assignment of error.

In view of the fact that appellee, who was the owner of section 9, was in actual possession of a part of the section and by reason thereof in constructive possession of all of the section not in the actual occupancy of appellant, if there was any error at all in the charge complained of in the third assignment of error, it was harmless, and the same must be said with regard to the charge referred to in the fourth and fifth assignments.

There is no merit in the sixth assignment. By the judgment appellee recovered all of section 9 except that part adjudged to appellant, which is specifically described. The jury gave appellee two cents apiece for all ties cut by appellants, but appellee in open court withdrew its claim for damages, which rendered any judgment upon this issue unnecessary.

We are of the opinion that the judgment must be affirmed, also, upon the ground that from the undisputed evidence appellant Ratcliff recovered more land than he is entitled to. The evidence was sufficient to show that appellant made no claim to any part of the section except that covered by his preemption claim until 1898; but if we concede that he settled upon the land in 1891, claiming the entire quarter section of 160 acres, and that his possession and claim continued unbroken to the filing of the suit, still it is indisputably true that in 1897 appellee by its tenants, J. A. Ratcliff, and Samuel Haynes, entered upon the section and so remained in actual possession of portions of it up to the filing of the suit.

It was held by the Supreme Court in Read v. Allen (63 Texas, 158) that "where one holding a deed to land described by metes and bounds leases a part of it to a tenant by specific metes and bounds, then the possession of the tenant is only coextensive with the bounds specified in the lease and not with the whole tract," and the same rule is also announced in Craig v. Cartwright (65 Texas, 424). The later case of Bowles v. Brice (66 Texas, 730), while not in terms overruling the former opinions in the cases referred to, seems to us to hold directly to the contrary. We gather from the statement of the facts in the latter case that the only possession of the land held by the owner was through tenants to whom had been rented the improved and cultivated land, only a part of the whole tract, and that these tenants had no right or authority over the land not in cultivation. We can see no difference between the facts of that case and this. We understand the court to hold in that case that, in such case, the constructive possession of the owner, by virtue of this actual possession of the tenant, extends to the limits of the entire

tract and was not limited to the boundaries of the portion leased to the tenants. This view was followed in Puryear v. Friery, 16 Texas Civ. App., 325; Parker v. Cockrell, 31 S. W., 222; Collier v. Couts, 45 S. W., 487, and Texas & N. O. R. R. Co. v. Haynes, 97 S. W., 850. See, also, Ruffin v. Overby, 11 S. E., 251; Scott v. Elkins, 83 N. C., 424; Scaife v. Western N. C. Land Co., 90 Fed., 278.

If these views be correct as to the effect of the possession by Haynes, and J. A. Ratcliff as tenants of appellee, then from May 11, 1898, appellee was in constructive possession of all of section 9, except such as appellant had actually enclosed. He had no such possession of any of the balance of the land as would interfere with such constructive possession of the true owner, and, in consequence, from the date of such entry by appellee, the true owner, his adverse possession ceased except as to such as he had under enclosure. Sutton v. Carrabajal, 26 Texas, 500; Evitts v. Roth, .61 Texas, 84; Parker v. Baines, 65 Texas, 608; Anderson v. Jackson, 69 Texas, 347.

In Evitts v. Roth, *supra,* it was held that this was true where the owner was not in actual possession of any part of the land at the beginning of the adverse possession. His entry immediately put an end to the constructive possession of such adverse possessor, which attached at once to the actual possession of the true owner.

There can be no controversy upon the evidence that appellant did not have any of the land enclosed for ten years before suit was filed, except such as was included within the boundaries of the land adjudged to him. The small rice patch was only kept enclosed for four or five years, when the fence was removed and used to enclose the small portion near the house and east of the preemption strip. This pasture was not shown to have been enclosed for ten years before suit was brought, and upon this appellant had the burden of proof. The evidence indicated to the contrary. The occasional cutting of wood and pasturing of stock on the unenclosed portions of the section, as shown by the evidence, was not such actual possession and occupancy as would affect the constructive possession of the owner. Fuentes v. McDonald, 85 Texas, 135; Sellman v. Hardin, 58 Texas, 86.

It is therefore clear that in no view of the evidence was appellant entitled to recover any more land than was adjudged to him, and for that reason, regardless of such errors, if any, as may have been committed upon the trial, the judgment should be affirmed.

Appellee asks us in its brief to reform the judgment so as to limit appellant's recovery to the two enclosed patches near his house, and adjudge all of the balance to appellee. It does not appear that any such action was invoked in the trial court. What appellee denominates a cross-assignment of error, is not in fact such, but only a request that we reform the judgment. Appellee not having, in the trial court, in any way signified any dissatisfaction with the judgment, it will be affirmed as rendered.

*Affirmed.*

Writ of error refused.